We have seen the recent decision by the Attorney General in the case of Daniel Girmay-Negussi. We ask that this decision, we don't believe the Attorney General made the correct ruling in this matter in applying the Supreme Court rulings of what was taking place by the BIA In ruling on this decision, they correctly first determined that the Christopher Barr does have an exception and then of course the Attorney General took it upon himself to make his own opinion as to why the exception does not apply and did not apply any of the standards that were enunciated by the Supreme Court nor did it allow the BIA to make its own rulings as to why in fact the BIA decided that there was in fact an exception and in doing so, that's an error by the Attorney General's office in doing that Obviously, I have been informed that that case will be appealed in the U.S. Circuit Counsel, can I just ask, I'm not sure I'm following you, is it your position that the Attorney General lacked the authority to enter the decision he entered? I'm not saying that, Your Honor. I'm saying the reasoning is incorrect. and because the Attorney General himself, he didn't allow the Board to do its job in making its decision on the exception to the Prosecutor's power, Your Honor and therefore, obviously we argue that Neguski v. Holder, which was originally decided by the, when it was at the Supreme Court and ultimately to the Fifth Circuit and the BIA, the petition argues that that was the correct decision and that the analysis by the Supreme Court is also correct We ask the Court to uphold the Federenko case, which Congress deliberately, or not deliberately, left it vague as to whether or not there's an exception and we argue that obviously the DPA and the structure in the DPA is broad enough that would allow the petitioner to rely upon that exception That's the first argument, Your Honor. Then the next point we'd like to bring up from the petitioner's point of view is that upon remand he should have been able to present new arguments to the Court and there should have been a full-blown hearing on the issues that the Board thought was necessary to decide including whether or not the respondent, or the petitioner now, would have been persecuted upon returning to his native Syria As a Christian or as a deserter or evader? Your Honor, as a Christian, one. And there's evidence that the State Department reports were submitted by counsel below and the Court didn't have an opportunity to put those State Department reports into the record and question the petitioner at the time regarding those arguments that he would have brought in and new evidence regarding the persecution of Christians, Your Honor, in Syria Counsel, I guess I'm confused as to the procedural posture of this case is really confusing As I understand what the BIA did in the decision that we're reviewing now, but tell me if I'm wrong on this It essentially said, you know, you're late in filing this motion to reopen because, and you say, well, but I didn't notice and that explains that But I thought the BIA then went on to say, well, even if it were timely, and even if we looked at all of this new evidence this quote-unquote new evidence you think bears on the decision, it wouldn't make any difference because your client would still lose And as I understand it, that's the decision that's before us now Am I wrong in that understanding of the procedural posture of the case? Two points, Ryan. One, yes, the BIA did go into a lengthy analysis, though, in making this decision And I believe that's up for review before Your Honors right now Because it did go into what the court could or could not have done It analyzed the lengthy, whether the delay of counsel in filing the appeal late was also analyzed by the BIA as well But our bigger argument from the petitioner's point of view is that he should have had a meaningful opportunity to address those issues before the court followed And the BIA did address that, and we did address that in our opening brief as well, Your Honor So the court does have that jurisdiction on that issue, on whether or not he should have had that meaningful review No, I guess I'm sorry to jump in, I'm confused You did get that meaningful review because the BIA looked at the new evidence that you wanted it to look at It reviewed it, and it said it's not enough to change the outcome Your Honor, they didn't allow for testimony Or that the respondent at that time had an open hearing to bring in witnesses, an expert, or for him to testify on the facts and issues regarding those new country conditions And how those conditions would have affected his case materially, Your Honor That's the problem, is that although it was only limited to the record, it was not testimonial, it was not an evidentiary hearing Which is what the respondent or the petitioner would have wanted at the time, Your Honor But why was your client entitled to an entirely new hearing? He had a chance at the first hearing to present all of his evidence as to why he was entitled to cap relief And the judge ruled against your client? Yeah, ruled against your client All the BIA said to the IJA on remand is you need to take another look at this and analyze specifically the country conditions evidence Whatever evidence was in the record already, that's what the IJA did I'm not sure why you think you would be entitled to sort of a de novo hearing on that issue, given the limited remand But even putting that aside, the BIA then did look at the new country conditions evidence that you presented Yeah, I think it was you that presented it to the BIA And it said, but this isn't enough to make any difference because your client would still not be entitled to relief So I'm just not sure on what you're complaining about in terms of the process here The testimony, Your Honor And had he known there was a hearing, he would have been able to have a different legal strategy on testimony And the remand is that the court failed to look at those country conditions properly Had he been able to speak on those country conditions through counsel The complaint is that he would have then been able to get potentially a different decision from the court On those issues of testimony, bringing more evidence, bringing himself forward, rebut anything that the government has Unfortunately, it was only relied upon those documents that were submitted and not his testimony, Your Honor But counsel, what the BIA said though is that, well, your obligation on a motion to reopen is to present to us Whatever this new evidence you think will be a difference maker And they said, you didn't present any evidence, I think, about any testimony You presented some new documents and we looked at them, but they don't change the outcome Well, we believe that the court erred in the way it reviewed those documents In its analysis of those documents, which is what we've also outlined, Your Honor And because of the facts, specifically, that is the error of the court in applying the wrong standard In reviewing whether or not one would be harmed as a Christian having to return to Syria And all the State Department reports regarding that issue, Your Honor, is what was the error Mr. Sapte, if I can ask you a question I do find one piece of evidence that you attached as Exhibit C to your blue brief That is a report published in 2018 that talks about country conditions for military deserters and evaders And I don't see that that was specifically examined below The only thing that I didn't see that has been raised that wasn't specifically examined below There was a finding about his individual risk of being targeted because he had been a military deserter or evader But not about country conditions And I'd like you to address specifically how you view the impact of that exhibit On our jurisdiction to do what you want us to do That exhibit is key And we would like the court to entertain that, the IJ that is, on the specific issue that we've attached as Exhibit C, Your Honor Because it's something new And something that the court didn't have before it as well It's something that, not only that, it's an ongoing analysis of what happened That deserters, which is what he testified to in part that he's done And how it would cause him to be persecuted, Your Honor So I do ask that it be remanded for this analysis, Your Honor Absolutely Counsel, where in the record is there evidence that he was a deserter? I thought he was discharged from military service after his third round Well, when he was discharged, he did not want to participate He did not want to participate in the future, Your Honor And that would be his desertion theory that we would come up with That he is an individual who does not want to participate anymore in the military Which we would argue is a deserter Can I ask whether you exhausted before the BIA the argument that his participation in the military was compelled, coerced Was that exhausted? Your Honor, let me go back to the court decision, Your Honor It was... Our argument was an exhaustion, Your Honor I'm sorry? Yes, Your Honor We had brought in whether he... what he had to do He testified at the IG level and at the board level It was, in fact, reviewed by the BIA Can you give me a record cite for that, please? My read of the record is that he argued that it wasn't a massacre There wasn't... in front of the immigration court There wasn't a massacre, so it wasn't persecution The persecuted bar wouldn't apply for that reason And then on appeal, you made a very different argument Which is that his participation in that battle was compelled I just want to give you a chance to respond So, I mean, I'm not clear on your question, Your Honor My understanding is that before the immigration court Your argument was that what the judge called a massacre wasn't a massacre And that on appeal, you presented a different argument for the first time Which is that his participation in that battle was compelled, coerced So the persecuted bar shouldn't apply for that reason Correct, Your Honor So, below... And I see the testimony that he did, in fact, speak, Your Honor About that he was compelled to be in the military And that the massacre, obviously, was something that he did not want to be involved with But that was... that's what he was compelled to do, Your Honor Is that what you're asking? Could you give me a record cite for that, counsel? Where did he testify to that? Could you testify that he was not wanting to be part of the military operations? Yes Give me a minute, Your Honor, maybe in rebuttal I would be able to get that, Your Honor That's fine, you can come back to it With that, I'll reserve any balance of my time for rebuttal, Your Honor That's fine Let's go ahead and hear from opposing counsel then, please You're on mute You're muted You're on mute Pardon me Alison Igo, representing the respondent in this case In a nod to Judge Watford, I'd like to just briefly go through the procedure in this case Because it is a little bit confusing And it's really important to understand what is before the court In August of 2016, the board affirmed both the withholding and asylum decisions by the judge, down below They were not merits decisions, they were specifically focused on the persecutor bar The court, rather the board, then remanded with specific directions to the IJ to look at the current country conditions That case then went back Country conditions for Christians, right? Yes, specifically for Christians, that's exactly correct And I also want to correct a bit of a misconception here Is that when the case went back The immigration judge, the petitioner made the argument that he did not receive the decision The October 16th decision on CAT However, the immigration judge looked at that and said Number one, you were not represented by an attorney Number two, his present attorney did not file his notice of appearance Until 14 or 13 months after the immigration judge issued that decision And the decision was sent to the petitioner specifically at Atalanta Detention Center Where he had been detained When he was released, he did not update his address Which is what he was required to do And that is the reason that he did not receive the decision in a timely manner Can I jump in and just ask you about In terms of the mailing of the IJ's October 2016 decision to counsel The lawyer who on the face of the decision Is listed as representing the respondent The petitioner here Is Akram Abusharar I'm not sure if I'm saying his name right But that is the lawyer to whom the decision should have been mailed and was not, correct? No, I disagree, your honor Mr. Abusharar was the attorney who represented Mr. Farah in front of the board But as I laid out in my brief And as the immigration judge noted in her 2016 decision Or rather, her March 2018 decision on the motion to reopen Mr. Abusharar, although he received the board decision remanded And he was well aware of the fact that this case was going back to the immigration judge He has to file a separate notice of appearance in front of the immigration judge to appear I followed all that in your brief and I get your point My question is, he must have done that Isn't it the case that he must have done that because on the face of the decision itself The immigration judge says that Mr. Abusharar is appearing on behalf of the respondent His name would have been on the board of immigration appeals decision And that's where the IJ would have gotten that And in fact there is no notice of appearance in the record And the first notice of appearance by Mr. Abusharar was filed And he concedes this, he does not point to any other notice of appearance He does not claim that he filed one The first notice that he filed was in November of 2017 When he also requested a copy of the October 16th decision I guess I'm just confused as to the internal processes by which the immigration court mails out its decisions So you're saying that, I understand that you do need to file a separate appearance form Before the immigration court, that's separate from the BIA, I get that But then I don't understand why, if the immigration court is issuing the decision And lists a particular attorney as representing the respondent Why wouldn't the court mail the decision to that person that's listed on the face of its own decision Why would it mail it to some other lawyer, that doesn't make any sense It might mail, and I think what happened was, this is the comment about it being mailed to the wrong attorney They would file, perhaps they would mail a courtesy copy But the fact that that lawyer did not receive it Is not a basis for a due process violation And that's the issue, that's what Mr. Abishara was arguing in his brief Is that it was a due process violation because he never got the decision But the immigration judge said, even if his attorney didn't And they might have, and I believe they do, if there is an attorney who represents the petitioner in front of the board I believe they would send that attorney a courtesy But it doesn't mean that they have to do that And they backed it up by sending a copy directly to Mr. Farah in this situation And he had not updated his address, which he is required to do But counsel, it was deemed untimely, and then they went on to address the merits, right? Yes, they said even... Can we talk about the merits please? Sure, the immigration judge looked at what he submitted With a motion to reopen, his argument was, I should have had another hearing I would have testified to this, I would have testified to that But the agency in this case noted that he never submitted an affidavit of what he would have testified about He didn't submit any other information And on the basis of the information that the IJ had in front of her Which included the current country conditions She found that there was no likelihood of him being tortured if returned to Syria And of course, the Convention Against Torture has very, very specific requirements You know, it has to be by or with the acquiescence of the government And what the immigration judge said was that, you know, on the basis of him being a Christian In fact, minority religions in Syria look to the government for protection So it was unlikely And they also pointed to the fact that his family, two of whom worked for the government His brother and his father His father was a border patrol agent, his brother was a police officer Both of them, including the rest of his family, had remained in Syria And were there at the time of the hearing and the motion, I believe And perhaps, most likely, are still there And they had not suffered any problem on the basis of their religion Can I stop you there? Because you make this point And we have read your briefs, I promise We read them carefully And you make this point very clearly But they're not in the position he's in And I just want you to respond, if you could To the notion that he's been outed on this Facebook By this Facebook photo Because that is a significant distinction My first question is whether AR-632 is the photo that we're supposed to be talking about Is that the photo that appeared on Facebook? Is that your understanding? I don't have it in front of me, but I believe so He only talks about one photo where he is pictured with a rifle And there's several other photos So maybe he could... I'll ask that when it's his turn again Because there are several other photos And I'm not sure if they appeared on Facebook or not But is it... What is your response to his argument Which is that that photo puts him in a different position From his family members? It might put him in a different position But how does it show that the government Would torture him based on that? This was a private citizen who had been Had been his superior in the military Who he said took a dislike to him When he realized that he was a Christian That he was not a Muslim And that he, you know, had approached him About joining some group He refused and then was outing him in that way But that does not prove that the government Which is what you have to prove Either by or with the acquiescence of the government here This is one military officer Who I'm not sure the record even shows At the time he posted that photo Was still in the military So it's really a private citizen Outing him in a way for being a Christian Perhaps Or having been in the military But there are very, very many former military officers Who remain in Syria With no problem with the government I mean after all he worked for the government As a military, you know, as a soldier So he doesn't, you know Except for his late argument that he was He was a defector But there is no, there's no evidence in the record That he did defect I mean the evidence really shows that He finished out his term And he declined, I think, to re-up Did he exhaust the argument that he was a defector? I believe it was raised Briefly in one sentence In his brief But there was no evidence that he was a defector He just, it said For this reason, at a minimum What is needed is a specific statement Why a Christian military defector Who fled the country And was threatened by extremists But that's the only That's the only reference that he makes to that That's in his motion to reopen and reconsider That he filed And there's no There was no evidence or any prior argument In front of the immigration judge originally That he was looking for asylum or withholding On the basis of him having defected So is that your answer, Ms. Ego To the argument about the addition of Exhibit C Which is this country conditions report For military evaders The risk of torture or persecution For people who are military evaders or deserters I don't believe that that I could be wrong But I don't believe that that is in the record And the immigration judge and the board Would have only It was just attached to the brief It was attached to the brief And of course, I mean The board and the immigration judge Cannot consider what is not in front of them And they also can't consider arguments That are in a one line Referring to military defectors When there is no other evidence that he defected Or that he was relying on As a basis for deferral under the convention So is it your argument That we don't have jurisdiction To consider whether country conditions Would have created a risk of torture or persecution Based on defector or evader status I would say that if the court were to Were to consider that It would have to remand to allow the board To do it in the first instance But the fact that this was The petitioner's motion to reopen It was up to him And the regulation and the statute say That he has to It's his burden to produce new material And previously unavailable evidence And I'm not sure that this Although it's a 2018 report I'm not sure that there were not previous reports That talked about defectors And the treatment of defectors in Syria And so if it were previously available The board would not have received that As the court pointed out He had a full and fair hearing Originally in October of 2015 When the immigration judge heard all of his claims He was represented by a very able attorney He was able to put in And in fact did put in multiple documents That are in the record to support his case To go back now and to say I get a do-over Or I get to put in Even his argument that he gets to put in more evidence About the mandatory persecutor bar Is just simply not supported by law He did not file a timely appeal to the board From the immigration judges October 2016 For the reasons that I stated And in his motion to reopen He did not provide what the statute requires Which is an affidavit, a sworn affidavit Saying what he would prove New, previously unavailable and material evidence Showing that he has at least a prima facie case And so really what is before this court is And I'd like to also emphasize the review that this court has The court has to find that the board acted In an arbitrary and capricious manner When it denied his motion And when it denied the appeal from his motion To the immigration judge Clearly it considered his arguments It took into account the evidence that was in the record It took into account his arguments about due process And it found that just none of them was supported by the evidence Or by the facts in the case or by any of his arguments And so I would say that the record more than supports The position that the board was not arbitrary and capricious In this instance in denying his very untimely motion to reopen If the court does not have any other questions I will rest on my briefs Thank you, thank you for your argument Thank you very much We'll hear from opposing counsel Sir, you'll save some time on the clock Yes, Sharon, thank you On page 504 of the RER There was a question to a respondent And now, let's see Now, did you issue orders for military actions by the unit And you declined to participate? Yes, but I refused Question, and you were not punished for your refusal? Yes, of course I'm sorry, counsel, was this in the 2012 service When he was drafted for a third time And released after a month? Yes, your honor I was addressing Judge Christian's argument Or a question regarding his refusal I'm just asking for a record cite I'm just asking for the page citation, please  504? And also, again, on page 510, your honor It also talks about his fear of returning to the military service And I just lost the page There's another citation in the movie papers Regarding when he was in the hospital And he was injured That he did not want to go back to military services So, as far as that, your honor If there's any other questions, I'll answer those Judge Wofford? Chief Judge Rosenthal? No, it doesn't appear that there are other questions Thank you for your argument Thank you both for your helpful arguments We'll take that case under advisement And we're going to stand in recess That's the conclusion of our arguments for today And for the week Thank you, have a wonderful weekend, your honors Thank you
judges: Christen, Watford, Rosenthal